UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LORI A. KILEY,

                    Plaintiff,                    07-CV-6617

_____v.                        **DECISION**
                                                   **and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                    Defendant.

_____

## Introduction

Plaintiff Lori A. Kiley ("Plaintiff") brings this action pursuant to the Social Security Act ("the Act") § 205(g) as amended (42 U.S.C. § 405(g)), seeking review of the decision of the Administrative Law Judge ("ALJ") Bruce Mazzarella, denying her application for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI"). Specifically, Plaintiff alleges that the decision of the ALJ denying her application for benefits was against the weight of the substantial evidence in the record and was based on errors of law.

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)"), on grounds that substantial evidence supports the Commissioner's decision that Plaintiff was not disabled from her alleged onset date, January 19, 2002, through August 31, 2006, the date of the ALJ's decision. Plaintiff cross-moves for judgment on the pleadings on grounds that the Commissioner's decision was not based on substantial evidence, was based on error of law, and is in violation of Title II and Title XVI of the Act, as well as the

Commissioner's Regulations promulgated thereunder.  For the reasons set forth below, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law.  I therefore grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings.

## Background

### I.  Vocational Background and Procedural History

On December 30, 2002, Plaintiff, at the time 44 years old and seasonally employed at J-Con Parks (an operator of concessions at New York State Parks) filed applications for SSI and DIB under Titles II and XVI of the Act, alleging that she was disabled since January 19, 2002, because of exacerbations of existing back and knee problems due to a motor vehicle accident, and asthma.  (T. 87-90, 518).  Plaintiff has a college education and whose past relevant work experience consists of working as a medical secretary, school aide, and cashier.  (T. 125-131).

Plaintiff worked as a cashier for J-Con Parks at Letchworth State Park in Castile, New York, from 1999 until August 2005.  (T. 547).  She had worked for J-Con Parks seasonally from late April or early May of each year until the end of October, for approximately 24-28 hours weekly.  (T. 511, 513).  In 2005, when she last worked at J-Con Parks, her job permitted her to alternate between sitting and standing during a six hour work day, working less than five days a week.  (T. 514, 543) Plaintiff was required to, and could, lift 10 pounds in the performance of her job.

(T. 117, 543-44). Plaintiff did not have trouble getting along with people at J-Con Parks. (T. 588).

From 2002 to 2004, Plaintiff collected unemployment insurance during the off-season when she was not working at J-Con Parks. (T. 530). As a prerequisite for obtaining unemployment benefits, Plaintiff consistently declared that she was ready, willing, and able to work. (T. 530-31).

In August 2005, Plaintiff left J-Con Parks, and was employed as a cashier with Walmart. Plaintiff admitted that although she was able to perform her job at J-Con Parks, she left to work at Walmart because she wanted to earn more money. (T. 23, 513). However, four months after starting at Walmart in December 2005, Plaintiff left her employment due to neck and back pain, and her inability to stand as required. (T. 511, 512-13, 542, 517). Plaintiff also claimed that she did not get along with her co-workers. (T. 545).

Plaintiff's 2002 application for benefits was denied by the Social Security Administration ("SSA"). (T. 29, 41-45). Plaintiff then requested a hearing before an ALJ. (T. 46-47). A hearing was held on September 14, 2004 via video teleconferencing at which she was unrepresented (T. 574-609). The ALJ considered the case de novo and on December 13, 2004 issued a decision that Plaintiff was not disabled within the meaning of the Act. (T. 30-40).

Plaintiff then obtained counsel and requested review of the ALJ's decision. (T. 62). The Appeals Council granted review under the substantial evidence and new and material evidence provisions

of the SSA regulations, and remanded the claim for further proceedings. (T. 71-73).

A second hearing was held on May 24, 2006 before ALJ Bruce Mazzarella. (T. 502-573). Plaintiff appeared with counsel and testified. A vocational expert also appeared and testified. The ALJ considered the case de novo and on August 31, 2006, issued a decision finding that Plaintiff was not disabled. (T. 10-24). The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 9, 2007. (T. 6-7). This action followed.

## II. __Medical Background__

### __A. Injuries__

Plaintiff claims that she became disabled following an automobile accident on January 19, 2002. (T. 518) The record reveals that plaintiff injured her left knee when it came in contact with the dashboard of her car. Id. She claims that the force of the accident caused her kneecap to be displaced, and that she was also treated for a contusion. (T. 518, 355). There is no evidence in the record that plaintiff's automobile accident caused any injury to her neck or spine.

According to the plaintiff, the automobile accident aggravated injuries she suffered in 1991, when, while working as a registered nurse, she was attacked by a patient resulting in a back injury. (T. 515). She claims that because of the attack and resulting injury, she was no longer able to work as a nurse. Id. Plaintiff

testified that as a result of her back injury, she has had continuous low back pain that "waxes and wanes depending on the weather." (T. 518).

**_____B. Psychological History**

Prior to her automobile accident, Plaintiff was counseled for "mild-to-moderate" depression from December 2001, to March 11, 2002 at Noyes Mental Health Service ("Noyes"). (T. 337-44). She was diagnosed with depressive disorder by Dr. Anthony Racaniello, a psychiatrist, on January 11, 2002. (T. 225). On February 10, 2003, Dr. John Thomassen, a psychologist, performed a psychiatric consultative evaluation who assessed mild depressive disorder, but noted that Plaintiff could perform rote tasks and follow simple directions. Dr. Thomassen diagnosed Plaintiff as possibly being able to do complex tasks consistent with her skill level and also found that Plaintiff was "likely" to have some problems relating to co-workers and coping with stress. (T. 283-286).

On November 26, 2003, Plaintiff was diagnosed by Ms. Laura Bond, a licensed social worker, as having adjustment disorder and depressed mood. (T. 345, 346). Plaintiff was referred by her insurance company to Michael J. Kuttner, a psychologist specializing in pain management. (T. 274). In January 2003, Plaintiff saw Dr. Kuttner three times for pain management of her low back pain and leg pain which resulted from her automobile accident a year earlier. (T. 274-76). Dr. Kuttner found that Plaintiff's mood and affect were euthymic, and she was not depressed, anxious, or somatically preoccupied. (T. 274, 275). He

recommended relaxation training, biofeedback, sensory alteration techniques and cognitive therapy. (T. 275).

In February, 2004, Plaintiff attended a session at Noyes with Ms. Bond who reported that Plaintiff had no depressive symptoms, and there was no diagnosis of a mental disorder. (T. 347-51). On December 21, 2005 Plaintiff received a mental status examination from Ms. Bond who found Plaintiff to be mildly depressed, in part due to her job at Walmart, but that her stress had decreased since leaving Walmart. (T. 465). Plaintiff stated that her symptoms of depression were alleviated by taking the medications. (T. 535).

## C.  Physical Problems

Dr. John Klibanoff, an orthopedist, saw Plaintiff in February, March, and April 2002, regarding injuries to her left knee. (T. 232-35). By April 2002, Plaintiff stated she was "doing great." (T. 234). Dr. Klibanoff noted that Plaintiff had full, pain-free, normal range of movement. (Id.). He concluded that Plaintiff could continue with normal activities, and was to be seen "as needed." (T. 235).

Plaintiff was seen by Dr. Sweeney, her primary care physician, in February and March, 2002, because of back and knee pain. (T. 243). By April 2002, Dr. Sweeney noted that Plaintiff was slowly improving and had deep tendon reflexes. (T. 244-45). In October 2002, Plaintiff told Dr. Sweeney that she had worked through the summer. (T. 241). In November 2002, Plaintiff told Dr. Sweeney that she thought she had fibromyalgia. (T. 240). Dr. Sweeney noted multiple trigger points, a symptom of

fibromyalgia.  Id.  He recommended an antidepressant to relieve Plaintiff's symptoms of fibromyalgia, but noted that Plaintiff could not afford it and would attempt another medication.  Id.  On December 24, 2002, Dr. Sweeney stated that Plaintiff was unable to work through February 1, 2003 due to low back pain.  (T. 238).

Dr. Clifford Everett, an orthopedist, saw Plaintiff from February to April, 2002.  (T. 227-29).  On March 29, 2002, Dr. Everett found that Plaintiff's strength, reflexes, sensation, and ranges of motion were normal, and her problems were muscular. (T. 228, 229).  By April, Dr. Everett noted that Plaintiff could do full-time work, lift up to 30 pounds and return to normal activities, although this diagnosis did not take into consideration Plaintiff's knee problems.  (T. 227).

On December 17, 2002, Dr. J. Thanik, a pain management physician, saw Plaintiff.  (T. 237). He found that Plaintiff's gait was normal, that she could heel-to-toe walk without difficulty, she had tenderness over the sacroiliac facet joints but the straight leg raising test was negative.  (T. 237).  Dr. Thanik noted that Plaintiff's sensation, reflexes, and motor strength were normal. Id.  In February and April, 2003, Dr. Thanik reported that nerve blocks had not helped Plaintiff.  (T. 395).

On March 26, 2003, Dr. Fenwei Meng, an internist, performed a consultative examination.  (T. 302-03).  Plaintiff was measured at 5'6" and weighed 281 pounds.  (T. 303).  Plaintiff reported that she could cook, clean, do laundry, shop, shower, and dress herself. Id.  Dr. Meng noted that Plaintiff limped on the left, but could

walk heel-to-toe, and could squat one-half of the way down. (T. 303). Dr. Meng also noted that Plaintiff's stance was normal and she used no assistive devices. He also performed tests to assess Plaintiff's asthma, which revealed that her chest was clear. (T. 304). Dr. Meng noted that Plaintiff had full ranges of motion in her cervical and lumbar spines, and in all joints. Id.

Dr. Robert Supinski, an orthopedist, evaluated Plaintiff's left knee on July 16, 2003. (T. 355). He found that Plaintiff's knee had crepitus, but her ligaments were stable and had a full range of motion. An MRI showed some chondromalacia in the patella, and some degenerative changes in the menisci, but no definite tears. (T. 355; see T. 353). In 2003, Dr. Supinski recommended Hyalgan injections, which were done from September to December on both knees and provided "significant relief." (T. 355, 358, 359-60; see T. 361, 405).

In March 2003, Dr. Sweeney found that Plaintiff's knee reflexes seemed "okay." (T. 378). Plaintiff returned to work at J-Con Parks on June 21, 2003 but Dr. Sweeney imposed work restrictions which limited plaintiff to lifting 10 pounds, and could not repetitively bend, stoop, or stand for a prolonged period of time. (T. 371). Dr. Sweeney noted that Plaintiff also could not crawl or climb, could work for more than 30 hours a week during which she should change positions frequently. Id.

In March and April 2004, Dr. Sweeney noted that Plaintiff received some relief from massage therapy. (T. 365, 366). In April 2004, Dr. Sweeney found that Plaintiff's straight leg raising

test was "pretty good," and her ankle and knee reflexes were equal and symmetric. (T. 365). He gave Plaintiff a note for J-Con Parks that restricted her to lifting eight pounds, with no climbing, prolonged standing or sitting, no repetitive twisting or bending, and recommended frequent changes of positions. (T. 365).

On February 2, 2005, Dr. Supinski completed a medical source statement which stated that Plaintiff could lift/carry 10 pounds occasionally and frequently; stand/walk less than two hours in an eight-hour workday, and sit without limitation. (T. 325-26). Dr. Supinksi noted that Plaintiff was limited in flexion and extension of her left knee, and was not to climb, balance, kneel, crouch, crawl, or stoop. Id.

Dr. Sweeney's notes from 2005 indicate that Plaintiff had some problems with asthma. (T. 429). He opined that her problems may have been caused by the weather, or by her husband smoking in the house even though he had encouraged Mr. Kiley to stop smoking indoors. Id. Dr. Sweeney noted that Plaintiff responded to Advair and Singular. (T. 430). Plaintiff returned to work at J-Con Parks on April 27, 2005 with restrictions imposed by Dr. Sweeney that she not lift more than 10 pounds, should frequently change her position, and could not repetitively stoop, bend, twist, crawl, or run. Id.

In August and September, 2005, Plaintiff worked at Walmart with Dr. Sweeney's permission. (T. 436, 437). Plaintiff worked there about 30 hours per week, and was limited to standing for 45 minutes at a time. (T. 437). In September, the pulmonary

function tests ordered by Dr. Sweeney revealed normal results. However, a December pulmonary function test results led Dr. Sweeney to diagnose mild chronic obstructive pulmonary disease. (T. 411, 444, 445, 446). In January 2006, Plaintiff told Dr. Sweeney that she had back pain due to excessive standing at Walmart, but that her asthma had improved. (T. 449, 450, 451).

On February 21, 2006, Dr. D. Downs noted that a January 16, 2006 MRI showed a small posterior central disc herniation at C5-6, but no foraminal encroachment. (T. 425). An MRI of Plaintiff's thoracic spine ordered by Dr. Downs revealed slight kyphosis, but no central canal encroachment. Id. Dr. Downs noted that Plaintiff's complaints of hand numbness and tingling appeared to result from diminished blood flow which was likely related to her body posture and health habits. (T. 426). He found Plaintiff's cervical and thoracic back pain was aggravated by the motor vehicle accident and her obesity and suggested activity modifications and work limitations, and would see Plaintiff as needed. Id.

On April 28, 2006, Dr. Supinski completed a medical source statement in which he indicated that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand/walk for at least two hours in an eight-hour workday, and had to alternate between sitting and standing. (T. 421-22). Dr. Sweeney stated that Plaintiff was limited in pushing/pulling in her lower extremities, could not perform postural activities (climbing, balancing, kneeling, crouching, crawling, stooping), but she had no manipulative or environmental limitations. (T. 423, 424).

On May 4, 2006, Dr. Sweeney completed another medical source statement in which he stated that Plaintiff could occasionally lift less than 10 pounds due to neck and back pain, and could stand and walk for less than two hours in an eight-hour workday. (T. 418-24). Dr. Sweeney opined that Plaintiff could only sit for less than six hours and was limited in pushing/pulling in her upper and lower extremities. He also noted that Plaintiff also had postural limitations, and was limited in her exposure to temperature extremes and humidity/wetness. (T. 419, 420).

## Discussion

## I.   Jurisdiction and Scope of Review

42 U.S.C. §405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. "Substantial evidence" is "more than a mere scintilla [of evidence]; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lamay v. Commissioner of Social Sec., 562 F.3d 503 (2d Cir. 2009).

Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing court does not try a benefits case de novo). Nevertheless, the Court must

"scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 55 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

Plaintiff asserts that the ALJ's decision was against the weight of the substantial evidence contained in the record, was arbitrary and capricious, and contained legal errors. Accordingly, Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and cross-moves for judgment on the pleadings pursuant to Rule 12(c).

Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). In deciding a motion for judgment on the pleadings, the Court applies the "same standard as that applicable to a motion to dismiss for failure to state a claim, accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." King v. American Airlines, Inc., 284 F.3d 352 (2d Cir. 2002). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out some factual allegations that are "enough to raise a right to relief beyond the

speculative level." <u>Bell Atlantic Corp. V. Twombly</u>, 550 U.S. 544, 570 (2007).

In order to prevail on a Rule 12(c) motion, the moving party must demonstrate that they are entitled to judgment as a matter of law. <u>Burns Intern. Sec. Services, Inc. V. International Union</u>, 47 F. 3d 14 (2d Cir. 1995). The moving party is entitled to judgment as a matter of law "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Lovejoy-Wilson v. NOCO Motor Fuel, Inc.</u>, 263 F.3d 208, 212 (2d Cir. 2001) (quoting Fed.R.Civ.P. 56(c) and <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)). The Court should grant Plaintiff's Rule 12(c) motion when the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose. <u>See</u> <u>Carroll v. Secretary of Health and Human Serv.</u>, 705 F.2d 638, 644 (2d Cir. 1981). The Court should grant the Commissioner's Rule 12(c) motion if the Court finds that "there was substantial evidence to support the Commissioner's denial of benefits." <u>Burgess v. Astrue</u>, 537 F.3d 117 (2d Cir. 2008).

## II. __The Five-Step Sequential Evaluation Process__

In finding that Plaintiff was not disabled within the meaning of the Act, the ALJ adhered to the Social Security Administration's Five-step sequential evaluation process for evaluating applications for disability benefits set forth at 20 C.F.R. § 404.520. <u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982). Pursuant to the sequential analysis, the ALJ first considers whether the claimant

is currently engaged in substantial gainful activity. If he is not, the ALJ then moves to Step Two, and considers whether the claimant has a "severe impairment" which significantly limits his ability to do basic work activity. If the claimant has such an impairment, the ALJ at Step Three considers whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1, Part 404, Subpart P of the Social Security Regulations. If the claimant does not have a listed impairments, the ALJ moves to Step Four, and inquires whether, despite the claimant's impairment, he has the residual functional capacity ("RFC") to perform his past work. If the claimant is unable to perform his past work, the ALJ determines whether there is other work which the claimant can perform. If there is no other work which the claimant can perform in the economy, the ALJ determines that the claimant is disabled and therefore entitled to benefits. Berry, 675 F.2d at 467.

III. **The ALJ's determination that Plaintiff was not disabled at Step One of the sequential analysis is supported by substantial evidence in the record.**

Plaintiff claims that the substantial evidence in the record does not support the ALJ's finding that Plaintiff had engaged in substantial gainful activity from January 2002 through August 2005.

I find, however, that substantial evidence in the record supports the ALJ's finding that Plaintiff was engaged in substantial gainful activity from January 2002 through August 2005, and therefore was not disabled during that time. According to the Program Operations Manual Systems (POMS) DI 1050.015.B "Tables of

SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity" Table 2, Plaintiff's income during that period exceeded the threshold establishing a presumption that she was engaged in substantial gainful activity. The regulations also provide that the medical and vocational evidence may also be considered in determining whether an individual was performing substantial gainful activity. 20 C.F.R. §§ 404.1571, 416.971. Substantial medical and vocational evidence in the record from 2005 establishes that Plaintiff was engaged in substantial gainful activity. Plaintiff worked for J-Con Parks and Walmart throughout 2005. Moreover, a questionnaire sent to J-Con Parks, where Plaintiff was employed through August 2005, indicated that Plaintiff was not given any special consideration and was able to perform all of her job duties. (T. 218). From January 2002, through August 2005, Plaintiff was able to perform work at a level of substantial gainful activity and the ALJ correctly determined that Plaintiff was not disabled at Step One of the sequential evaluation process.

Plaintiff, however, contends that this Court should consider new evidence which supports her claim that she did not engage in substantial gainful activity when she worked at J-Con Parks. Specifically, Plaintiff seeks to have admitted an April 30, 2009 letter from Mr. John Marino, President of J-Con Parks, (identified as Exhibit A to Plaintiff's Brief in support of her Motion for Summary Judgment). Plaintiff claims that this letter demonstrates that she was not engaged in substantial gainful activity during her employment at J-Con Parks because she was given special

consideration by Mr. Marino. Plaintiff contends that the ALJ's consideration of a questionnaire completed by Sally Marino, Mr. Marino's wife, was improper because Sally was not Plaintiff's employer and did not provide accurate answers concerning her functional ability.

The production of new evidence at the district court level is controlled by § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which provides that the court may order additional evidence to be taken at any time, but only upon a showing that there is new evidence which is material, and that good cause exists for failure to incorporate it in an earlier proceeding. 42 U.S.C. § 405(g); Lisa v. Sec'y of Dep't of Health and Human Servs., 940 F.2d 40, 43 (2d Cir. 1991); Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988). Plaintiff has failed to explain why this evidence, which relates to the time period from 2002 to 2005, was not produced until 2009- well after her administrative proceedings had concluded. Accordingly, Plaintiff has failed to establish good cause for failing to submit Mr. Marino's letter during her administrative proceedings and is, therefore, inadmissible. See Lisa, 940 F.2d at 44, 45 (Where the plaintiff fails to show that the evidence sought to be admitted could not have been obtained during the pendency of the hearing, she has not established good cause). Nor is the proposed evidence material since it is not "relevant to the claimant's condition during the time period for which benefits were denied." Lisa, 940 F.2d at 43. The evidence proposed by Plaintiff establishes that Plaintiff was able to

complete her daily job duties while employed at J-Con Parks and, therefore, supports the ALJ's finding that Plaintiff was performing substantial gainful activity during the period 2002 to 2005.  <u>See</u> April 30, 2009, letter from Mr. Marino, attached as Ex. A to Plaintiff's Memo.  Although Mr. Marino also stated that he "tried to accommodate" Plaintiff, that statement is contradicted by the previous statements of Ms. Marino, who wrote that Plaintiff received no special consideration and performed her duties with no problems.[1]  (<u>Id.</u>, T. 218).  Assuming Mr. Marino did provide Plaintiff with a chair for sitting more frequently, this does not alter the level of work Plaintiff was performing.  A cashier position can be performed either sitting or standing, and when done from either position, the position still qualifies as the same job.  <u>Jock v. Harris</u>, 651 F.2d 133, 135 (2d Cir. 1981).  Moreover, Plaintiff had the opportunity to object to the ALJ's consideration of the questionnaire at the hearing or to offer evidence refuting it, but failed to do so.  (T. 505)

---

[1] Plaintiff argues that even though she ". . . made earnings some months [in the years 2002 to 2005] above substantial gainful activity level . . . this did not constitute substantial gainful activity . . . due to the unusual allowances that were made for her and the special work 'conditions' she was granted." Plaintiff's Brief, page 9.  This argument is without merit and unsupported by the record.  Even affording John Marino's April 30, 2009 letter admissibility, it supports the conclusion that Plaintiff was capable of performing her job with the accommodations made by her considerate employers, Mr. and Mrs. Marino.  The accommodations consisted of adjusting her weekly schedule, placing limitations on the amount she was to lift, providing a rubber mat for her to stand on, and a chair for her to sit on while she performed her job as a cashier.

**IV.  The ALJ's determination that Plaintiff was not disabled at
    Step Four of the sequential evaluation process is supported by
    substantial evidence in the record.**

Plaintiff argues in the alternative that if the Court finds
that she was not disabled from January 19, 2002 to August 2005,
there is still substantial evidence to support a finding at Step
Four of the sequential evaluation process that she was disabled
from August 2005 through August 31, 2006.  In support of her
position, Plaintiff contends that the ALJ erred by not affording
proper weight to the opinions of her treating physicians.

The ALJ did not err in giving less weight to some opinions of
Plaintiff's treating physicians because they were inconsistent with
other substantial evidence in the record.  A treating source's
opinion on the issues of the nature and severity of an individual's
impairment will be given controlling weight if the opinion is well-
supported by medically acceptable clinical and laboratory
diagnostic techniques, and is not inconsistent with other
substantial evidence.  20 CFR §§ 404.1527(d)(2), 416.927(d)(2).

The majority of the medical evidence in the record applies to
the period prior to August 2005, and during that time Plaintiff was
able to perform seasonal work at the level of substantial gainful
activity, despite her impairments.  (T. 21, 577-578).  Subsequent
to Plaintiff's alleged disability onset date in 2002, Dr. Everett
stated that further treatment of Plaintiff's back was unnecessary,
and he released her to full-time work with only a thirty pound
lifting restriction.  (T. 229).  On April 15, 2002, Dr. Klibanoff

opined that Plaintiff could continue with normal activities concerning her knee, which did not disable her. (T. 235). In October 2002, Dr. Sweeney noted that Plaintiff's low back pain did not prevent her from performing her summer job at J-Con Parks where she could sit and stand at will, and indicated that she could lift 10 pounds. (T. 241). In 2003, Dr. Meng stated that Plaintiff had only mild limitations in regards to prolonged standing, walking, using stairs, and avoiding environmental irritants. (T. 18, 304). That same year, Dr. Sweeney found that Plaintiff's part-time work through June 2005 was "okay," and that she could perform her job with a 10 pound lifting restriction provided she could alternate between sitting and standing. (T. 435). In June of that year Dr. Sweeney opined that Plaintiff could lift up to 10 pounds but that she could not repetitively bend or stoop, stand for prolonged periods, crawl or climb, and provided that she should change positions often. (20, 371, 365, 434). In April 2004 Dr. Sweeney gave a similar opinion and cleared Plaintiff to perform her seasonal work for several years which Plaintiff admitted at that time that she could perform. (T. 23, 577, 578, 36).

The medical source statement completed by Dr. Sweeney on May 4, 2006, which limited Plaintiff to a level of activity that did not allow her to perform even sedentary work, was inconsistent with other medical reports in the record. (T. 21). The ALJ properly determined that, to the extent that Dr. Sweeney's May 4, 2006 assessment was inconsistent with his own treatment notes and

prior opinions, as well as the record as a whole, it would be given little weight. Id.

Based on Plaintiff's description of her past relevant work, the vocational expert testified that her past jobs included cashier II, an unskilled position that requires a light level of exertion as ordinarily performed in the national economy, but performed by Plaintiff with a sit/stand option. (T. 22). The record is clear, and the ALJ's decision is supported by substantial evidence, that the Plaintiff has the residual functional capacity to return to her past relevant work as a cashier II on a full-time basis since she performed that job at the level of substantial gainful activity on a part-time basis, with a sit/stand option. (T. 23).

## V.   The ALJ properly found that Plaintiff's allegations regarding her limitations were not entirely credible.

Plaintiff contends that the ALJ erred in failing to properly evaluate and assess Plaintiff's credibility, symptoms of her impairments, and the pain that accompanied them, when determining her RFC. Plaintiff claims that her testimony was neither unreasonable nor exaggerated given the medical evidence, and was consistent with her past reporting of symptoms.

I find however, that the ALJ properly determined that Plaintiff's allegations regarding her limitations were not entirely credible. Plaintiff's testimony contains inconsistencies which undermine her credibility. Plaintiff testified that she needed help with household activities, but told Dr. Meng that she was able to cook, clean, do laundry, shop, shower, and dress herself.

(T. 539, 303).  In assessing credibility, contradictions such as
these may be considered.  See T. 18-19; See 20 C.F.R.
§§ 404.1529(c)(4), 426.929(c)(4).

Nor are Plaintiff's subjective claims fully supported by the
record.  In evaluating Plaintiff's credibility, the ALJ properly
considered such factors as the frequency and duration of the
symptoms, precipitating and aggravating factors, the effect of
medication, treatment, functional restrictions, and the claimant's
daily activities.  See 20 CFR §§ 404.1529(c)(3), 416.929(c).  The
ALJ properly found that Plaintiff was not disabled during the years
she engaged in substantial gainful activity regardless of medical
or other factors.  (T. 21)  During that period Plaintiff was making
written submissions that included a description of daily activities
that were arguably inconsistent with the ability to perform even
sedentary work, although she was continuing to perform her seasonal
work at J-Con Park at the level of substantial gainful activity.
(T. 104-09).  In addition, the record reveals and the ALJ properly
found that Plaintiff's doctors permitted her to work for many
years.  (T. 22).  Moreover, during the period of time in which
Plaintiff alleges she was disabled, she collected unemployment
insurance, and as a prerequisite to doing so she stated that she
was ready, willing, and able to work.  (T. 22).  Therefore,
Plaintiff's testimony was inconsistent and contrary to the
substantial evidence in the record and supported the ALJ's
conclusion as to the Plaintiff's credibility.

## Conclusion

Substantial evidence in the record supports the ALJ's finding that Plaintiff was not disabled within the meaning of the Act. Therefore, I grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings. Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 6, 2009